UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JESSIE DOUTHIT,<br><br>                 Petitioner,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>               Respondent. | Case No. 1:10-cv-00291-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Jessie Douthit ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision denying Petitioner's application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Social Security Administration for further proceedings consistent with this Memorandum Decision and Order.

# PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Supplemental Security Income on January 24, 2006, claiming that she had been disabled and unable to work since July 1, 1997, due to several mental impairments (including depression, bipolar disorder, post-traumatic stress disorder ("PTSD"), and schizoaffective disorder) and the physical impairment of bilateral hip dysplasia. Her application was denied initially and on reconsideration, and a hearing was held on April 24, 2008, before Administrative Law Judge ("ALJ") Michael A. Kilroy. The ALJ issued a decision finding Petitioner not disabled on July 3, 2008, and Petitioner timely requested review by the Appeals Council. The Appeals Council denied Petitioner's request for review on April 29, 2010, and the ALJ's decision became the final decision of the Commissioner. Petitioner timely filed an appeal of the Commissioner's final decision to this Court on June 10, 2010. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the April 24, 2008 hearing, Petitioner was represented by counsel and testified on her own behalf. The ALJ also heard testimony from medical expert Dr. James Bruce and vocational expert Beth Cunningham. Based largely on the opinions of Dr. Bruce – a non-treating, non-examining medical source – the ALJ issued a decision finding Petitioner not disabled on July 3, 2008.

At the time of the hearing, Petitioner was 33 years of age and reported that she attended high school through the eleventh grade. Petitioner's prior work experience includes work as a check-in clerk at a dry cleaner, dishwasher and cook at a restaurant,

housekeeper at a motel, and training as a Certified Nursing Assistant, although she did not obtain her certification.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner had the following severe impairments: anxiety disorder; affective disorder; personality disorder; bilateral hip dysplasis; and hepatitis C.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Petitioner's hip dysplasia under Listing 1.02 (*Major dysfunction of a joint(s)*), Petitioner's hepatitis C under Listing 5.05 (*Chronic liver disease*), and Petitioner's mental impairments under Listings 12.04 (*Affective disorders*), 12.06 (*Anxiety-related disorders*), and 12.08 (*Personality disorders*). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner had the RFC to perform light work as defined in 20 CFR 416.967(b), with the following qualifications:

**MEMORANDUM DECISION AND ORDER - 3**

She must be given the opportunity to alternate sitting, walking, and standing throughout an 8-hour workday to relieve pain and/or discomfort, can walk no further than 1/4 of a mile at a time, can stand and/or sit for no longer than 1 hour at a time, can only occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl, can seldom use stepladders, and must avoid concentrated exposure to vibration, extreme could, and rough, uneven, wet, or slipper [sic] surfaces. The claimant is also limited to a work environment without contact with large numbers of people at any one time, with no constant and/or critical supervision, an environment requiring routine activities where new learning is at the unskilled or semi-skilled level and where new learning is done primarily visually with only minimal reading required, and the claimant must work in an environment with no high constant stress nor requirement for high constant focus.

(AR 20.)

The ALJ found Petitioner was not able to perform any past relevant work. (AR 26.) If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ found that Petitioner could perform work existing in significant numbers in the national economy, specifically noting the positions identified by the vocational expert: parking lot cashier; school bus monitor; and film touch-up inspector. (AR 27.) Because the ALJ found that Petitioner could perform work existing in significant numbers in the national economy, he concluded that Petitioner is not disabled within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 4**

# STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner attacks the ALJ's decision on two grounds. First, Petitioner argues that the ALJ improperly rejected the opinions of her treating physician (Dr. Eddie Rodriguez-Lopez, M.D.), an examining physician (Dr. Jerry Doke, Ph.D.), and a treating physicians' assistant (Thea Heaton), in favor of opinions of a non-treating, non-examining medical expert (Dr. James Bruce) who testified at the hearing. Second, Petitioner argues the ALJ erred by failing to consider the impact that Petitioner's medications have on her residual functional capacity. Petitioner argues that these alleged errors compromised the ALJ's findings at steps two, three, and five of the sequential evaluation. Petitioner requests that the Court remand the case to the Commissioner with instructions to properly consider the medical opinions that were previously rejected by the ALJ and to consider the side effects

of Petitioner's medications in determining her residual functional capacity. Petitioner's

arguments are addressed in turn below.

1.      **Evaluating Medical Opinions**

Ninth Circuit cases distinguish among the opinions of three types of physicians:

(1) those who treat the claimant (treating physicians); (2) those who examine but do not

treat the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant (non-examining physicians).  *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir.

1995).  Generally, more weight is accorded to the opinion of a treating source than to

non-treating physicians.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  If the

treating physician's opinion is not contradicted by another doctor, it may be rejected only

for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th

Cir.1991).  If the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject the treating physician's opinion without providing "specific

and legitimate reasons" supported by substantial evidence in the record for so doing.

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).  In turn, an examining physician's

opinion is entitled to greater weight than the opinion of a non-examining physician.

*Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450

(9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is

conclusory and not supported by clinical findings.  *Matney ex rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a physician's

opinion of a petitioner's physical condition on the ultimate issue of disability.

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does

not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r*

*of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may

not support the physician's opinion include clinical findings from examinations,

conflicting medical opinions, conflicting physician's treatment notes, and the claimant's

daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v.*

*Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595 (9th Cir. 1999).

### A. *Opinion of Treating Physician Dr. Rodriguez-Lopez*

The record contains a Mental Capacity Assessment submitted by treating

physician, Dr. Eddie Rodriguez-Lopez. (AR 303.) In the assessment, Dr. Rodriguez-

Lopez opines that Petitioner has several marked and extreme limitations in her ability to

function due to her mental impairments. The assessment – submitted on a check-off form

– indicates that Petitioner has marked limitations in the following eight areas: "The ability

to remember locations and work-like procedures" (AR 303); "The ability to understand

and remember very short and simple instructions" (*id.*); "The ability to carry out detailed

instructions" (*id.*); "The ability to work in coordination with or in proximity to others

without being distracted by them" (*id.* at 304); "The ability to perform at a consistent pace

with a standard number and length of rest periods" (*id.*); "The ability to accept

instructions and respond appropriately to criticism from supervisors" (*id.*); "The ability to

travel in unfamiliar places or use public transportation" (*id*. at 305); and "The ability to set realistic goals or make plans independently of others." (*Id*.)

The assessment also indicates that Petitioner has extreme limitations in her ability to function in the following areas: "The ability to understand and remember detailed instructions" (AR 303); "The ability to maintain attention and concentration for <u>extended</u> periods" (*id*.); "The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" (*id*.); "The ability to sustain an ordinary routine without special supervision" (*id*.); "The ability to complete a <u>normal</u> <u>workday</u> without interruptions from psychologically based symptoms" (*id*. at 304); and "The ability to complete a normal <u>workweek</u> without interruptions from psychologically based symptoms." (*Id*.) Based upon the above limitations, Dr. Rodriguez-Lopez opined that Petitioner would miss work more than four times on average each month. (*Id*.)

Dr. Rodriguez-Lopez also completed two other forms: the first indicates that Petitioner meets Listing 12.02 for organic mental disorders (AR 306); and the second is a Residual Functional Capacity Questionnaire. (AR 307.) In the residual functional capacity assessment, Dr. Rodriguez-Lopez opines that, due to her physical and mental impairments, Petitioner would miss more than four days of work each month, would need unscheduled breaks during an eight hour day, would need to sit or lie down in a recliner at least four hours in an eight-hour workday, has a maximum ability to sit for fifteen minutes at a time, a maximum ability to stand and/or walk for forty-five minutes at a time and approximately one hour in an eight-hour workday, would need unscheduled breaks of

about twenty minutes every two hours, and that Petitioner can walk approximately one or two city blocks without rest or severe pain. (AR 307-308.)

The ALJ rejected Dr. Rodriguez-Lopez's opinions concerning the severity of Petitioner's limitations because they were not supported by the record, inconsistent with Petitioner's own testimony concerning her abilities and daily activities, and contradicted by the opinion of medical expert Dr. James R. Bruce. (AR 25-26.) Petitioner argues that the rejection of Dr. Rodriguez-Lopez's opinions was improper. For the reasons explained below, the Court disagrees.

On this issue, the Code of Federal Regulations makes clear that, if a treating source's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the opinion is to be given controlling weight. 20 CFR § 404.1527(d)(2); *see also* Social Security Ruling ("SSR") 96-2p ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted.").[1] When a treating source's opinion is not entitled to controlling weight, the regulations set forth the following factors to determine how much weight to give the opinion: (i) the length of the treatment relationship and the frequency of

---

[1] Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005).

examination; (ii) the nature and extent of the treatment relationship; and (iii) the amount of evidence and/or explanations the source presents to support his or her opinion. 20 CFR 404.1527(d)(2).

Here, the ALJ properly concluded that Dr. Rodriguez-Lopez's opinions were not entitled to controlling weight under the regulations, because they were not well-supported and were inconsistent with other substantial evidence in the record. For instance, Dr. Rodriguez-Lopez opined that Petitioner suffers from an organic mental disorder under Listing 12.02 due to past substance abuse. As the ALJ notes, there is no medical evidence to support such a conclusion; while the record does indicate that Petitioner previously had a substance abuse problem, nothing in the medical records implicate the presence of an organic mental disorder other than the check-off style form submitted by Dr. Rodriguez-Lopez. Dr. Rodriguez-Lopez did not provide any explanations for his opinions and no other doctor diagnosed Petitioner with an organic mental disorder. Similarly, the record is devoid of any clinical evaluations or contemporaneous treatment notes from Dr. Rodriguez-Lopez supporting the conclusion that Petitioner suffers from an organic mental disorder.

The Ninth Circuit has held that an ALJ may properly reject a physician's opinion where the opinion is given in a check-off format without any explanations for the conclusions, and not otherwise supported by the record. *Crane v. Shalala*, 76 F.3d 252, 253 (9th Cir. 1996) (affirming the ALJ's rejection of three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of

their conclusions").

Petitioner is correct that the ALJ relied, at least in part, on the testimony of a non-treating, non-examining medical expert, Dr. Bruce, when rejecting Dr. Rodriguez-Lopez's opinions.  In his decision, the ALJ stated that, "[i]n a longitudinal view of these records and, after listening to the claimant's testimony, medical expert, Dr. Bruce, expressed his opinion that he did not see signs, symptoms, or other medically acceptable clinical findings to support a severity level of any symptoms beyond moderate levels." (AR 25.)  The ALJ concluded that "Dr. Rodriguez-Lopez's opinion regarding the claimant's mental limitations is thus given minimal weight where it is inconsistent with the residual functional capacity as determined in this decision and where it conflicts with the opinion of the medical expert, Dr. Bruce." (*Id*.)  The ALJ similarly rejected Dr. Rodriguez-Lopez's opinions concerning Petitioner's physical symptoms because they "exceed many of the claimant's own admitted abilities." (AR 26.)

The Ninth Circuit has held that, "[w]hen a nontreating physician's opinion contradicts that of the treating physician – but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician – the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  While an ALJ may not reject a treating physician's opinion based solely on the contradictory testimony of a non-

treating, non-examining medical expert, the Ninth Circuit has "consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (emphasis in original).

Under the law set forth above, the question created here is whether the ALJ provided specific, legitimate reasons based on substantial evidence in the record for giving more weight to a consulting medical expert over Petitioner's treating physician. As outlined above, the ALJ specifically noted that Dr. Rodriguez-Lopez's opinions were provided on a check-off style form, without any explanations, and without any corresponding clinical findings or treatment notes. The ALJ also noted that Dr. Rodriguez-Lopez's opinions were not consistent with "the claimant's admitted abilities to carry out her activities of daily living, take care of her disabled child, to travel, etc." (AR 25.) The ALJ noted that Petitioner "stated she could stand on her feet at any one time for a maximum of 45 minutes to an hour although she would need to lie down on her belly for about 20 to 30 minutes to rest afterwards . . . [and that] she could sit at any one time for a maximum of 45 minutes to an hour before needing to change positions." (AR 21-22.)

The ALJ found these statements inconsistent with Dr. Rodriguez-Lopez's assessment that Petitioner "has a maximum ability to sit for 15 minutes at a time and . . . a maximum ability to stand and/or walk for 45 minutes at a time and approximately 1 hour

in an 8-hour workday." (AR 25.) The ALJ also found Petitioner's daily activities

inconsistent with Dr. Rodriguez-Lopez's opinions, including the following: riding her

exercise bike in the mornings; taking her children to soccer practice; taking care of her

disabled child; and driving approximately five hours with her children to visit her sister.

(AR 24-25.)

Based on the above, the Court concludes that the ALJ provided specific and

legitimate reasons supported by the record for rejecting the opinions of Petitioner's

treating physician Dr. Rodriguez-Lopez. *See Crane*, 76 F.3d at 253 (holding that ALJ

permissibly rejected three psychological evaluations "because they were check-off reports

that did not contain any explanation of the bases of their conclusions"); *Morgan v.*

*Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding ALJ's

rejection of treating and examining psychologists' opinions in favor of non-examining

medical advisor where the treating and examining doctors did not explain their

conclusions and the claimant's daily activities were inconsistent with the opinions);

*Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (upholding ALJ's rejection

of treating physician's opinion where claimant's testimony conflicted with the treating

physician's opinion).

### B.     *Opinion of Treating Physician's Assistant, Thea Heaton*

Thea Heaton, a physician's assistant who had treated Petitioner on a long-time

basis, provided opinions concerning the severity of Petitioner's mental impairments. Ms.

Heaton's opinions are given on check-off forms dated July of 2006. (AR 293-296.) Ms.

Heaton opined that Petitioner met Listing 12.03 (*Schizophrenic, Paranoid & Other Psychotic Disorders*), Listing 12.04 (*Affective Disorders*), and Listing 12.06 (*Anxiety Disorders*). (*Id.*) The forms indicate that, in Ms. Heaton's opinion, Petitioner's mental symptoms caused mild restriction in her activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (AR 293-296.)

Noting that Ms. Heaton is not an acceptable medical source, the ALJ rejected Ms. Heaton's opinions for two reasons. First, the ALJ noted that "during the timeframe in which Ms. Heaton evaluated the severity of the claimant's symptoms, the claimant was also in the process of medication adjustment, including using Lithium, Depakote, Temazepam, Niravam, Risperdal, Zyprexa, Geodon, Wellbutrin XL, and Cymbalta, and that she stabilized on just a few medications at a later time." (AR 25.) Second, the ALJ found Ms. Heaton's opinions inconsistent with those provided by medical expert, Dr. Bruce, and stated that he gave "significantly more weight to the opinion of Dr. Bruce." (*Id.*) Petitioner argues that the ALJ improperly rejected Ms. Heaton's opinions. For the reasons below, the Court agrees with Petitioner.

Under Section 423 of the Social Security Act, the Commissioner of Social Security is required to consider all of the evidence available in a claimant's case record, including evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); *see also* 20 CFR § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). The term "medical sources" refers to both "acceptable medical sources" and other health care

providers who are not "acceptable medical sources." *See* 20 CFR § 404.1502 and 416.902. The regulations provide that "[i]n addition to evidence from the acceptable medical sources," evidence from other sources should be used to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d). This includes evidence from a physician's assistant such as Ms. Heaton. 20 CFR § 404.1513(d)(1).

Social Security Ruling 06-03p provides that non-acceptable medical sources should be evaluated under the same factors as all other medical opinions set forth in 20 CFR 404.1527(d) and 416.927(d). *See* SSR 06-03p ("These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources,' such as teachers and school counselors, who have seen the individual in their professional capacity."). These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. SSR 06-03p.

Relevant for the purposes of this case, SSR 06-03p provides the following: "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is

not an 'acceptable medical source.'" SSR 06-03p. "However, depending on the particular

facts in a case, and after applying the factors for weighing opinion evidence, an opinion

from a medical source who is not an 'acceptable medical source' may outweigh the

opinion of an 'acceptable medical source.'" *Id.* The ruling further indicates that, in

certain circumstances, it may be appropriate to give the opinion of a non-acceptable

medical source more weight than a treating source. *Id.* ("For example, it may be

appropriate to give more weight to the opinion of a medical source who is not an

'acceptable medical source' if he or she has seen the individual more often than the

treating source and has provided better supporting evidence and a better explanation for

his or her opinion.").

Under the circumstances presented here, the Court finds that the ALJ's failure to

evaluate Ms. Heaton's opinions under the factors set forth above constituted error. First,

unlike Dr. Rodriguez-Lopez's opinion, Ms. Heaton's opinion is supported by several

pages of progress notes concerning her observations of Petitioner's symptoms, the

medications Petitioner was taking, and the effects of those medications. (*See*, *e.g.*, AR

278-281, 314, 315, 326-333.) Second, the ALJ's only quantitative reason for rejecting

Ms. Heaton's opinion – that Ms. Heaton's opinions were given while Petitioner "was in

the process of medication adjustment" and "stabilized on just a few medications at a later

time" (AR 25) – is not supported by the record.

The ALJ refers to a progress note dated August 15, 2006, which states the

following: "She is out of the Geodon 40 mg . . . . She can't tell if this is making much of

a difference but then later notes that she has had a lot less hallucinations than she had been having before, a lot less of the visual and has quieted down the auditory." (AR 329.) The same progress note states that "[s]he does still feel like the depression does get her at times and has been on Cymbalta 60 mg and it has worked pretty well for her but still she is not feeling like where she wants to be and has never been tried on Wellbutrin or anything else like that." (AR 329.)

Even if the Court construed the above comments as supporting the ALJ's conclusion that Petitioner was stabilized in August of 2006, records from 2007 indicate that Petitioner's doctors were still trying to find a mood stabilizer to help control Petitioner's uncontrolled anxiety. (AR 312.)  For instance, a progress note dated October 1, 2007, states that Petitioner's depression remains "uncontrolled." (AR 315.)  And, in a progress note dated October 31, 2007, Dr. Nani Cabrera, D.O., stated the following:

> I think that she does have a significant component of
> depression to her bipolar disease.  I note that we are not on
> any mood stabilizers and I feel like what is happening in the
> afternoons is that her anxiety becomes out of control.  I think
> it is only contributed to be the fact that she doesn't get any
> helpful sleep at night. . . .  I discussed the options with the
> patient and what we are going to try and do is use a little
> Seroquel at night, 1) as a mood stabilizer.  Hopefully this will
> help her get some sleep during the day so she can deal with
> her stress better.  We indeed may need to give her an
> intermediate acting benzodiazepine for the afternoon times.  I
> don't think that this is simply just uncontrolled depression. . .
> . [I]n the future we may end up discontinuing her Wellbutrin
> and trying another antidepressant.  I do note that she has been
> on Risperdal and Geodon in the past but these were way too
> sedating for her. . . . If she is unable to tolerate the Seroquel
> we will go ahead and go back to our original plan and

> possibly trying some Lamictal and we may need a little
> anxiolytic for the afternoon hours.

(AR 312.)  These progress notes do not support the ALJ's rejection of Ms. Heaton's

opinions.

Finally, the ALJ rejected Ms. Heaton's opinion in favor of non-treating, non-

examining medical expert, Dr. Bruce, because "he is an acceptable medical source unlike

Ms. Heaton and specializes in psychology." (AR 25.)  The rejection of Ms. Heaton's

opinions without evaluating them under the factors set forth above, and as outlined by

SSR 06-03p, constituted error.

The Court cannot characterize this error as harmless.  The regulations required the

ALJ to evaluate all the medical evidence, including the opinions of non-acceptable

medical source Thea Heaton.  The ALJ discredited Ms. Heaton's opinions based upon the

opinion of a non-treating, non-examining medical expert and the finding that Petitioner's

mental impairments became stabilized under the right combination of medications, which

the Court finds is not supported by the record.  If Ms. Heaton's opinions were fully

credited by the ALJ, Petitioner would meet a listing under step three of the five step

process and automatically be entitled to benefits. *See Stout v. Commissioner, Social Sec.*

*Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that harmless errors are those that

are inconsequential to the ultimate non disability determination).  Accordingly, this case

will be remanded so that the Commissioner may properly evaluate Ms. Heaton's opinions

under the factors set forth in 20 CFR 404.1527(d) as referenced in SSR 06-03p.  The

Court expresses, however, no opinion as to the weight Ms. Heaton's opinions should be given under the proper analysis.

**C.**     ***Opinion of Dr. Jerry Doke***

Dr. Jerry Doke, Ph.D., conducted a mental status examination of Petitioner on March 1, 2006.  Dr. Doke diagnosed Petitioner with bipolar disorder type 1 and PTSD. (AR 255.)  Dr. Doke offered the opinion that Petitioner "is moderately impaired in her ability to perform work-related mental activities such as understanding, remembering, sustaining concentration, persistence, interacting socially, and adaptability because of her active hallucinations and her untreated psychotic symptoms." (AR 256.)

The parties dispute whether the ALJ, in fact, rejected Dr. Doke's opinion. Petitioner argues that "the ALJ never assigned a weight to [Dr. Doke's] opinion," and that, "[w]hile[] the ALJ seems to suggest in his opinion that Dr. Doke's opinion is in line with his residual functional capacity findings, the fact is, there are clearly part of Dr. Doke's opinion that if accepted would have directed different findings." (Pet. Opening Brief at 12, Dkt. 14.)  The Commissioner argues that, "despite Petitioner's claim, the ALJ did in fact review and evaluate the opinions of Dr. Doke and sufficiently accounted for his assessed limitations within his RFC assessment." (Respondent's Brief at 6, Dkt. 15.)

The Ninth Circuit has made clear that the conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician. *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984).  Similarly, an ALJ may not reject an examining physician's opinion in favor of a non-examining medical expert without

providing "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *See Morgan*, 169 F.3d at 600. Here, for the reasons set forth below, the Court finds that the ALJ at least partially rejected examining source Dr. Doke's opinion in favor of non-examining medical expert Dr. Bruce's opinion, and that the rejection of Dr. Doke's opinion absent specific and legitimate reasons supported by the record constituted error.

At step two of the five-step sequential inquiry, the ALJ was required to determine whether the claimant had a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).[2] In this case, at step two, the ALJ stated the following:

> The medical record contains additional references to possible diagnoses of bipolar disorder and schizoaffective disorder, sometimes only by self-reference from the claimant and at other times assessed by non-acceptable medical sources such as a physicians [sic] assistant. Upon a thorough review of the claimant's medical records and after hearing the claimant's testimony, the medical expert, Dr. James R. Bruce, testified that there were no medically acceptable signs and/or symptoms to support diagnoses of any mental disorders other than the above-listed anxiety disorder, affective disorder, and personality disorder. *The undersigned thus concludes that the claimant does not have medically determinable impairments of bipolar disorder or schizoaffective disorder.*

---

[2] The step two inquiry is defined as "a *de minimis* screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1138 (9th Cir. 2001) (italics in original, internal quotations and citations omitted). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual['] ability to work." *Smolen*, 80 F.3d at 1290 (internal quotations and citation omitted).

(AR 18) (emphasis added). Although the ALJ does not mention Dr. Doke by name in the above finding, the ALJ's conclusion that Petitioner does not have bipolar disorder was a direct rejection of Dr. Doke's diagnosis in favor of non-examining medical expert Dr. Bruce's testimony.

The ALJ emphasizes that the diagnosis of bipolar disorder was based upon Petitioner's own description of her symptoms, i.e., the diagnosis was "self-reported." This, however, is not a legitimate reason supported by substantial evidence in the record for rejecting Dr. Doke's opinion in favor of Dr. Bruce's opinion. *See Hardt v. Astrue*, 2008 WL 349003 (D. Ariz. 2008) (holding that the ALJ impermissibly discounted the opinion of a treating psychologist where the opinion was based on the claimant's subjective complaints because, the court held, as the practice of psychology depends at least in part on the evaluation of the claimant's subjective reports); *see also Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (disagreeing with ALJ's rejection of physician's opinion for relying on subjective complaints because chronic fatigue syndrome is primarily evaluated on the basis of subjective complaints). Furthermore, the record is replete with evidence that Petitioner's symptoms included auditory and visual hallucinations, depression, anxiety, sleep difficulties (including nightmares), unstable moods, panic attacks, and difficulty concentrating and remembering. (AR 243, 251, 252, 254, 278, 281, 288, 311, 314.) As Petitioner notes, all of these are symptoms of bipolar disorder according to the Mayo Clinic. (Pet. Opening Br. At 13, Dkt. 14.)

When evaluating the various medical source opinions, the ALJ spends one paragraph directly addressing Dr. Doke's opinion. (AR 24.) The ALJ does not assign the weight given to Dr. Doke's opinion, but states that "[t]he undersigned emphasizes that Dr. Doke's opinion does not contradict and is not counter to the claimant's mental limitations as stated in the claimant's residual functional capacity." (*Id.*)

The Court finds that the ALJ's rejection of Dr. Doke's opinion was error. As an examining source, in the absence of specific and legitimate reasons supported by the record, Dr. Doke's opinion was entitled to greater weight than the opinion of non-examining medical expert Dr. Bruce. The most obvious error caused by the ALJ's rejection of Dr. Doke's opinion occurred at step two where the ALJ expressly found that Petitioner did not suffer from bipolar disorder. The Court notes that the Ninth Circuit has found similar errors at step two harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that ALJ's failure to designate one of claimant's impairments as severe at step two of the five step inquiry was harmless where the ALJ found other severe impairments and proceeded to step three). The Court also notes that the ALJ did expressly incorporate Dr. Doke's opinion into Petitioner's RFC assessment.

However, it is clear that the ALJ rejected Dr. Doke's opinion in favor of Dr. Bruce. As stated above, this rejection constitutes error. The error was further compounded by the ALJ's reliance on Dr. Bruce's opinion throughout the rest of his Decision, assigning "significant weight to the opinion of Dr. Bruce" (AR 26), and relying on Dr. Bruce's opinion in rejecting the opinion of treating physician Dr. Rodriguez-Lopez

and the opinion of treating physician's assistant Thea Heaton. The Court need not determine whether the partial rejection of Dr. Doke's opinion was harmless, because the Court already has determined that the case will be remanded on other grounds. On remand, the Commissioner is directed to evaluate Dr. Doke's opinion under the standards governing examining physicians and, as such, Dr. Doke's opinion may not be rejected, implicitly or otherwise, without specific and legitimate reasons supported by substantial evidence in the record.

**2.      Side Effects of Petitioner's Medications**

Petitioner argues that the ALJ erred by failing to consider the side effects of Petitioner's medications in determining her RFC. When considering the severity of mental impairments, the federal regulations require the ALJ to consider the effects of medication. 20 CFR § 404.1520a ("We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorder, structured settings, *medication*, and other treatment.") (emphasis added). Similarly, SSR 96-8p provides that "[t]he RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p.

When evaluating Petitioner's RFC, the ALJ refers to Petitioner's psychological medications once: "It should be noted that during the timeframe in which Ms. Heaton

evaluated the severity of the claimant's symptoms, the claimant was also in the process of medication adjustment, including using Lithium, Depakote, Temazepam, Niravam, Risperdal, Zyprexa, Geodon, Welbutrin XL, and Cymbalta, and that she stabilized on just a few medications at a later time." (AR 25.)  As discussed more fully above, the conclusion that Petitioner stabilized on just a few medications after she had been evaluated by Ms. Heaton in 2006 is not supported by the record; progress notes from 2007 indicate that Petitioner's physicians continued to struggle finding medications to control Petitioner's psychological problems. (AR 312.)  Furthermore, under the federal regulations, and particularly in light of the amount of medications Petitioner was taking, the ALJ was required to devote more than one sentence to the effects of Petitioner's medications in determining her RFC.

The side effects of Petitioner's medications are numerous: the record indicates that Petitioner developed headaches from Lexapro (AR 242); Effexor caused difficulty with expressive language (*id.*); Zoloft caused balance difficulties and dizziness, including while driving (*id.*); Cymbalta increased her flashbacks (AR 243); Lithium made her feel like a "zombie" (AR 278); Risperdal and Geodon "were way too sedating for her" (AR 312); and Petitioner's physicians expected the drug Seroquel, which was to be taken at night, to cause drowsiness in the morning. (*Id.*)  The ALJ does not mention any of the above side effects.  The failure to do so constitutes error.  On remand, the side effects of Petitioner's medications should be taken into consideration in determining her RFC.

# CONCLUSION

Based on the above discussion, the Court finds as follows. First, the ALJ's rejection of treating physician Dr. Rodriguez-Lopez's opinion was permissible; the opinion was conclusory, submitted on a check-off form, unaccompanied by any explanations or treatment notes, and otherwise not supported by substantial evidence in the record. Second, the ALJ's rejection of treating physician's assistant Thea Heaton was improper; although Ms. Heaton's opinions were submitted on check-off forms, they were also accompanied by several pages of progress notes. Furthermore, although Ms. Heaton is not an acceptable medical source, the ALJ failed to evaluate her opinion under the factors set forth in SSR 06-03p, and the only reason for rejecting Ms. Heaton's opinion – other than the fact that Dr. Bruce disagreed with it – was not supported by substantial evidence in the record. Dr. Bruce's opinion is not entitled to greater weight than Ms. Heaton's simply by virtue of the fact that Dr. Bruce is an acceptable medical source. Third, the ALJ improperly rejected examining physician Dr. Doke's opinion; although the ALJ incorporated Dr. Doke's opinion into Petitioner's RFC assessment, he also rejected Dr. Doke's diagnosis of bipolar disorder in favor of the contrary opinion offered by non-examining source Dr. Bruce. Absent specific and legitimate reasons supported by substantial evidence in the record, the rejection of Dr. Doke's opinion in favor or Dr. Bruce's opinion was improper. Finally, the ALJ erred in failing to consider the side effects of Petitioner's medications in determining Petitioner's RFC. On remand, the Commissioner shall reevaluate Petitioner's application at steps two through five, and

reassess Petitioner's residual functional capacity.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Jessie Douthit's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this Memorandum Decision and Order.

3)      This Remand shall be considered a "sentence four remand," consistent with

42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852 (9th Cir. 2002).

DATED: August 10, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge